Sean Reis (SBN 184044)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
949-459-2124 (phone)
949-459-2123 (fax)
sreis@edelson.com

*Counsel for Plaintiff Marika Hamilton*
(additional counsel appear on the signature page)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIKA HAMILTON, individually and on behalf of a class of similarly situated individuals,<br><br>              Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>              Defendant. | Case No. C 09-4152 CW<br><br>**PLAINTIFF'S FIST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>The Honorable Claudia Wilken |

Marika Hamilton ("Hamilton" or "Plaintiff"), for her First Amended Complaint, alleges as follows upon information and belief, based upon, inter alia, investigation conducted by her attorneys, except as to those allegations pertaining to Plaintiff and her counsel personally, which are alleged upon personal knowledge:

**Introduction**

1.     This case is about Defendant's use of false pretenses and unlawful "triggering events" to fraudulently suspend accounts and reduce credit limits on home equity lines of credit ("HELOCs") across the country.  Wells Fargo Bank, N.A. ("Wells Fargo"), in attempt to transfer its customers away from low-interest HELOCs and into higher interest alternatives, and in part to limit its exposure to the risk of collapse in the United States housing market, has violated the Truth-in-Lending Act and its implementing regulation, Regulation Z, and has broken its contractual promises with its HELOC account holders (collectively the "Class members") – the

First Amended Complaint
Case No. 09-cv-4152

1  result of which was to deny Class members their access to hundreds of millions of dollars worth of affordable credit at a critical time.

2.  Rather than verify whether its borrowers had actually experienced material changes to their financial circumstances such that Wells Fargo could reasonably believe the borrowers would be unable to meet the terms of their HELOC agreements – pre-requisites to suspending a HELOC account based on a change in financial circumstances under Regulation Z, 12 C.F.R. § 226.5b(f)(3)(vi)(B) – Defendants reduced credit limits and froze accounts based on grossly insufficient factors such as a single derogatory item on a credit report, irrespective of the customers' actual financial circumstances.

3.  Each member of the Class had a HELOC for which Wells Fargo reduced the available credit limit or suspended the account in a manner that was illegal, unfair, oppressive and deceptive.  As a result of Defendant's wrongful actions, Plaintiff bring this class action on behalf of herself and the putative class for declaratory judgment, actual damages and attorneys fees under Regulation Z of the Truth-in-Lending Act ("TILA") (15 U.S.C. § 1640(a); 12 C.F.R. § 226.5(b)), and damages for breach of contract.

**Nature of the Claim**

4.  As recently as February 2009, Defendant sent a form letter to, on information and belief, hundreds of its HELOC customers, including Plaintiff and the other class members, stating:

> **[W]e regularly review** our home equity customers' credit performance and property values. Based on our review, we may decide to lower your credit limit or restrict your use of this Account. Further according to your Home Equity Line of Credit Agreement, if Wells Fargo reasonably believes that you will not be able to meet your prepayment requirements due to a material change in your financial circumstances; Wells Fargo may suspend the use of your Account.
>
> **As a result of our recent review, effective immediately, the Account is restricted to new advances, due to derogatory credit.**  No new advances will be made while the restriction is in effect. If you owe a balance on your Account, your monthly payments should continue to be made in a timely manner.

(*See* "February 26, 2009, Suspension Letter," a true and accurate copy of which is attached as Exhibit A.) (Emphasis in original).

First Amended Complaint                                2
Case No. 09-cv-4152

5. Defendant, acting intentionally and with knowledge, falsely claimed that its customers' financial circumstances had changed, through "derogatory credit" and other insufficient and immaterial factors so as to falsely trigger its ability under federal law to freeze the accounts or lower the credit limits. As a result, Defendant, in violation of federal law, reduced the credit limits and/or suspended the HELOC accounts of many homeowners, including Plaintiff, whose financial circumstances had not materially worsened so as give Defendant a reasonable basis for concluding the Plaintiff and other accountholders would be unable to meet the terms of their HELOCs.

6. Wells Fargo lacked a sound factual basis for sending these letters and reducing HELOC limits or suspending accounts. A single derogatory item or items on a credit report, without more, does not constitute a material adverse change in a borrower's financial circumstances. Even if a derogatory credit report could in some instances signal, along with other considerations, a material change in financial circumstances, Wells Fargo failed to reasonably investigate the nature or basis for the purportedly derogatory item or items to verify whether any purported adverse change had occurred in its borrowers' financial circumstances was material prior to sending its letters.

7. Making matter worse, when customers contacted Wells Fargo customer service to dispute the adverse action, Wells Fargo customer service representatives failed to reasonably respond to attempts by the customers to demonstrate that their financial circumstances had not materially changed. Instead, Wells Fargo threatened and otherwise actively discouraged customers from challenging Wells Fargo's decision.

8. Although federal law allows the creditor to freeze or reduce the line where the creditor reasonably believes that the consumer will be unable to make payments as agreed because of a material change in the consumer's financial circumstances, this exception requires both a material change in a borrower's financial situation and the creditor's reasonable belief that the borrower will not be able to repay the HELOC account as agreed. 12 C.F.R. § 226.5b(f)(3)(vi)(B).

First Amended Complaint                              3
Case No. 09-cv-4152

1   9.      With respect to Plaintiff and the Class, Wells Fargo froze accounts and reduced
2   credit limits where no material changes in the borrowers' financial circumstances had occurred
3   and Wells Fargo did not have a reasonable belief that the borrowers would be unable to repay their
4   HELOC accounts as agreed.  As a result, Defendant's intentional, systematic, freezing and mass
5   reducing of the limits on its customers' HELOCs and its use of standards that are inconsistent
6   with Regulation Z was and remains deceptive and illegal.

7   10.     Wells Fargo has intentionally breached its contracts and failed to meet its
8   obligations to its customers.  Wells Fargo has intentionally deprived those customers of crucial
9   affordable consumer credit at a critical time.  These customers have been improperly denied
10  access to their HELOCs and have further suffered damages in the form of the increased price of
11  credit, reduced credit scores, lost interest, annual fees and other damages.

**Parties**

13  11.     **Plaintiff Marika Hamilton:** Plaintiff maintains her primary residence in Fort
14  Wayne, Indiana (the "subject matter property").  In or around August 2008, Plaintiff obtained a
15  HELOC in the amount of $103,600 secured by the subject matter property.  Plaintiff obtained the
16  HELOC for her own personal purposes and not for business purposes.

17  12.     **Defendant Wells Fargo:** Wells Fargo Bank, N.A. is a national banking
18  association, chartered in Sioux Falls, South Dakota, with its main offices at 420 Montgomery
19  Street, San Francisco, California 94163.  Wells Fargo is one of the country's largest banks and has
20  offices throughout the country.

**Jurisdiction and Venue**

22  13.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §
23  1332(d)(2).  This First Amended Complaint alleges claims on behalf of a national class of
24  homeowners who are minimally diverse from Defendant.  On information and belief, the
25  aggregate of these claims exceeds the sum or value of $5,000,000.  This Court further has federal
26  question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under
27  Regulation Z of the Truth-in-Lending Act, 15 U.S.C. § 1647, 12 C.F.R. § 226.5(b).  This Court

has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

14. Defendant Wells Fargo is a national banking association chartered in South Dakota whose main offices are in California, and is considered a citizen of South Dakota and California for the purposes of diversity jurisdiction under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).

15. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

16. This Court has personal jurisdiction over Defendant under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed in California (specifically in the Northern District of California), and because Defendant is registered to do business in this state and actively conducts business in this District.

**Allegations as to Plaintiff's Individual Claims**

17. In August 2008, Plaintiff obtained a HELOC secured by the subject matter property in the amount of $103,600. (*See* "HELOC Agreement" a true and accurate copy of which is attached as Exhibit B.) Plaintiff obtained the HELOC for personal and household purposes, such as home improvements and renovations, including home bathroom remodeling and home carpet replacement.

18. On February 26, 2009, Hamilton received a notice that her HELOC was being suspended from further draws due to "derogatory credit." (*See* Ex. A.)

19. Plaintiff's derogatory credit item was a late charge of approximately $25 that she disputed owing. Plaintiff eventually settled the dispute over the late charge and, on information and belief, the derogatory item has since been removed from her credit report.

20. Plaintiff's credit history was otherwise strong. Likewise, Plaintiff's financial circumstances as a small business owner had not materially or adversely changed since the time she first obtained her HELOC.

21.     Plaintiff complied with all other terms of her HELOC agreement, making all required payments in a timely manner.

22.     Plaintiff attempted to request reinstatement as provided for in the February 26, 2009, suspension letter by calling the telephone number Wells Fargo provided. Plaintiff was told that the harder she pressed for reinstatement, the more difficult and painful Wells Fargo would make the reinstatement process. Wells Fargo representatives threatened to conduct a thorough examination of all of Plaintiff's accounts, including her business accounts. The message was made clear that Plaintiff would risk substantial additional loss of credit if she protested. When Plaintiff asked where she should put her money if her Wells Fargo HELOC was not safe, Wells Fargo customer service responded she "should carry cash."

23.     At no time did Plaintiff's income materially change or decrease, and at no time did Defendant have a reasonable basis for concluding Plaintiff, who had always made timely payments on all her loans, would not be able to meet the terms of her loan agreement. Despite these requests, Defendant only reinstated Plaintiff's HELOC after this lawsuit was filed and there is nothing to prevent Defendant, absent an Order from this Court, from attempting to wrongfully suspend or reduce Plaintiff's HELOC in the future.

24.     Plaintiff's HELOC with Defendant was her primary line of credit. Defendant's suspension of Plaintiff's HELOC negatively impacted the amount of credit she had available to pay for personal and household expenses. In addition to depriving Plaintiff of the availability of her HELOC, Defendant's acts damaged her credit rating and increased the cost of credit to her.

**Class Certification Allegations**

25.     Plaintiff seeks certification of a class under both Fed. R. Civ. P. 23(b)(2) and Rule 23(b)(3).

26.     **Definition of the Class:** Pursuant to Fed. R. Civ. P. 23, Marika Hamilton brings this First Amended Complaint against Defendant on behalf of the "Class" consisting of all Wells Fargo HELOC borrowers in the United States who received from Wells Fargo a letter suspending their HELOC accounts based on "derogatory credit."

1       Excluded from the Class are 1) any Judge or Magistrate presiding over this action and
2  members of their families; 2) Defendant, Defendant's subsidiaries, parent companies, successors,
3  predecessors, and any entity in which Defendant or its parent companies have a controlling
4  interest and their current or former employees, officers and directors; 3) persons who properly
5  execute and file a timely request for exclusion from the class; and 4) the legal representatives,
6  successors or assigns of any such excluded persons.

7       Plaintiff anticipates that amending the Class definition may become necessary following
8  discovery.

9       27.     **Numerosity:** The exact number of the members of the Class is unknown and is not
10 available to Plaintiff, but it is clear that individual joinder is impracticable.  Defendant sent its
11 generic credit line suspension letters to hundreds of borrowers, and a substantial percentage of the
12 recipients of these letters fall into the definition of the Class.  Class Members can be easily
13 identified through Defendant's records.

14      28.     **Commonality:** Common questions of fact and law exist as to all members of the
15 Class and predominate over the questions affecting only individual members.  These common
16 questions include:

17      (a) What were Defendant's criteria for suspending its borrowers' HELOCs;
18      (b) Whether Defendant's suspension of HELOC accounts or reduction of credit limits
19          based on derogatory credit and/or purported material changes in financial
20          circumstances were made without a reasonable basis for concluding such a material change
21          had in fact occurred;
22      (c) Whether Defendant's criteria for reducing HELOC credit limits and/or suspending
23          HELOC accounts based on "derogatory credit" and/or phantom material adverse changes
24          in accountholder finances violated Regulation Z;
25      (d) Whether Defendant's reduction of the credit limits or account suspensions for
26          "derogatory credit" and/or purported material changes in income breached the terms of its
27          HELOC Agreements;
28

First Amended Complaint                 7
Case No. 09-cv-4152

(e) Whether Defendant had a sound factual basis for concluding the derogatory credit items present in its HELOC borrowers' credit reports constituted material changes in the borrowers' incomes.

(f) Whether in those cases where a material change in financial circumstances had in fact occurred, Defendant had a reasonable basis for concluding the material changes would render such customers unable to meet the terms of their HELOC agreements.

(g) Whether Plaintiff and the Class members are entitled to relief, and the nature of such relief.

29. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class as Hamilton and other members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly to Plaintiff and the public. The state and federal laws under which Hamilton's claims arise do not conflict with the laws of any other state in any material way.

30. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Defendant has no defenses unique to Plaintiff.

31. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendant. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this First Amended Complaint. By contrast, a class action

presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

32. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to Class as a whole.  The policies of Defendant challenged herein apply and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

**Count I: Declaratory Relief Under TILA and Regulation Z**
**(on behalf of Plaintiff and the Class against Wells Fargo)**

33. Plaintiff incorporates the above allegations by reference.

34. The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) prohibit Defendant from changing any of the terms of a mortgage or HELOC, including the credit limit.  15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).

35. There is an exception under TILA and Regulation Z for any period in which the creditor reasonably believes that the consumer will be unable to make payments as agreed because of a material change in the consumer's financial circumstances.  This exception requires both a material change in a borrower's financial situation and the creditor's reasonable belief that the borrower will not be able to repay the HELOC account as agreed.  15 U.S.C. § 1647; 12 C.F.R. § 226.5b(f)(3)(vi), Comment 7.  Regulation Z permits Wells Fargo to suspend or reduce a HELOC account only when the designated circumstances exist, and the regulatory commentary emphasizes that credit privileges must be reinstated when those circumstances cease.

36. Before suspending the accounts or reducing the credit limits on its borrowers' HELOCs, Defendant had the obligation to both ensure that the customers' financial circumstances had in fact materially adversely changed and, if so, that such a change would reasonably render the customers unable to meet the terms of their agreements.

37. Wells Fargo's practice of suspending accounts or reducing credit limits based on

"derogatory credit" violates these duties. "Derogatory credit," standing alone, does not automatically mean a customer's financial circumstances have materially changed, and without further investigation or evidence, it does not give Wells Fargo a reasonable belief that the borrower will not be able to meet the terms of his or her HELOC agreement. On information and belief, with respect to Plaintiff and the Class, Wells Fargo failed to reasonably investigate whether any so-called "derogatory credit" item was disputed or legitimate, let alone an indicator of a material adverse change in financial circumstances.

38. Furthermore, "derogatory credit" is not one of the recognized "triggering events" that permits a bank to reduce a credit limit or suspend an account from further draws. As the Federal Reserve's Board Official Staff Commentary to Regulation Z provides, a creditor may not use any "'triggering events' or responses that the regulation expressly addresses in a manner different from that provided in the regulation." 12 C.F.R. § 226.5b(f)(3)(i) Comment 2. As the Official Commentary explains:

> For example, an agreement may not provide that the margin in a variable-rate plan will increase if there is a material change in the consumer's financial circumstances, because the regulation specifies that temporarily freezing the line or lowering the credit limit is the permissible response to a material change in the consumer's financial circumstances. Similarly a contract cannot contain a provision allowing the creditor to freeze a line due to an insignificant decline in property value since the regulation allows that response only for a significant decline.

39. Plaintiff and the other members of the Class have additionally been harmed because Defendant has knowingly failed to disclose information that would permit Plaintiff and the Class members to fairly determine whether to seek reinstatement, including but not limited to:

  a. how Defendant determines or defines a material change in income or financial circumstances,

  b. how Defendant computes an accountholder's ability to meet the terms of his or her loan agreement,

  c. Defendant's actual and specific reasons for the reduction of the HELOCs,

  d. the process, procedures, and guidelines pursuant to which Defendant implemented its reduction of credit limits/suspension of the HELOCs, and

  e. other necessary and material information.

40.  Wells Fargo has additionally used threats, intimidation, and other methods to strongly discourage Plaintiff and the other Class members from challenging Wells Fargo's decision to suspend or reduce the credit limits on their accounts.

41.  As an actual and proximate result of Defendant's above-described practices of: (a) failing to ensure a sound factual basis existed for concluding a material adverse change in financial circumstances had occurred, or, if it had, that the material change would reasonably preclude its borrowers from meeting the terms of their HELOC agreements; (b) using "derogatory credit" as a pretext for suspending their accounts or reducing their credit limits without investigating the legitimacy or facts surrounding the derogatory items or the derogatory items' impact on the borrowers' financial circumstances; (c) withholding necessary information required for a customer to determine whether pursuing reinstatement is worthwhile; and (d) using strong-armed tactics and threats to discourage borrowers from challenging Wells Fargo's decisions, Plaintiff and the Class members have suffered actual and consequential damages in the form of being denied the use and enjoyment of and access to their bargained-for credit at a crucial time, returned/dishonored check fees, finance charges, annual fees, lost interest, early termination fees and other costs and damages.

42.  The Class and Wells Fargo have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass suspension of accounts and reduction of credit limits violates TILA and Regulation Z.

43.  Hamilton, on her own behalf and behalf of the other Class members, respectfully seeks a declaratory judgment under 27 U.S.C. § 2201 that Defendant's mass suspension or reduction of HELOC credit limits in connection with its form letters violates TILA and Regulation Z.

<div style="text-align:center">

**Count II: Violation of the TILA and Regulation Z**
**(on behalf of Plaintiff and the Class against Wells Fargo)**

</div>

44.  Plaintiff incorporates the above allegations by reference.

45. Defendant knowingly lacked a sufficient factual basis for reducing Plaintiff's and the Class members' credit limits or prohibiting additional extensions of credit. Defendant lacked a sound factual basis for concluding Plaintiff's and the other Class members' financial circumstances had materially changed so as to support reducing the credit limits or prohibiting additional extensions of credit. Defendant also used improper triggering events for determining when such a material adverse change in financial circumstances had occurred.

46. Defendant's suspension and reduction of the HELOCs for Plaintiff and other Class members violated the Truth-in-Lending Act and Regulation Z.

47. Defendant's violations of the Truth-in-Lending Act and Regulation Z damaged Plaintiff and the other Class members in the form of being denied the use and enjoyment of and access to their bargained-for credit at a crucial time, returned/dishonored check fees, finance charges, annual fees, lost interest, early termination fees and other costs and damages.

48. Plaintiff, on her own behalf and behalf of the other Class members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

**Count III: Breach of Contract**
**(on behalf of Plaintiff and the Class against Wells Fargo)**

49. Plaintiff incorporates the above allegations by reference.

50. Plaintiff and the other Class members entered into HELOC agreements with Defendant Wells Fargo serving as the lender. The terms of these HELOC agreements constitute a contract between the Class members and Defendant.

51. The HELOC agreements contain a term that tracks Regulation Z and provides Defendant may reduce the credit limit or suspend additional extensions of credit during times when "(b) there is any material change in my financial circumstances that the Bank reasonably believes will make me unable to fulfill my repayment obligations under this Agreement." (*See* Ex. B.)

52. Plaintiff and the other Class members made all payments due to Defendant and otherwise fully performed under their HELOC agreements with Defendant.

53. The availability of credit and the triggering events the lender could use to suspend credit extensions were material terms.

54. Defendant materially breached the terms of the HELOC agreements by suspending the HELOC accounts for Plaintiff and other Class members' where no material adverse change in financial circumstances had first occurred that would give Defendant a reasonable basis for believing Plaintiff and the borrowers would be unable to fulfill their payment obligations under their agreements.

55. As a result, Plaintiff and the other Class members have suffered damages in the form of being denied the use and enjoyment of and access to their bargained-for credit at a crucial time, returned/dishonored check fees, finance charges, annual fees, lost interest, early termination fees and other costs and damages.

56. Plaintiff, on her own behalf and behalf of the other Class members, seeks damages for Defendant's breach of contract, as well as interest and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count IV: Common Law Fraud**
**(on behalf of Plaintiff and the Class against Wells Fargo)**

57. Plaintiff incorporates the above allegations by reference.

58. Wells Fargo's actions described herein were fraudulent.

59. At the time Wells Fargo sent the letters to Plaintiff and the Class Members suspending their HELOC accounts or reducing their HELOC credit limits, Wells Fargo intentionally misrepresented in those letters:

    a. That the customers' financial circumstances had changed such that those circumstances no longer supported the HELOC;

    b. That Wells Fargo had the ability to suspend the HELOCs based on "derogatory credit";

    c. That Wells Fargo had reasonably determined that the borrower's financial circumstances had changed so as to trigger Wells Fargo's ability to suspend the account or reduce the credit limits.

60. Wells Fargo knew these material statements were false at the time the statements were made, and Wells Fargo made these statements with the intent that Plaintiff and the Class members rely on these statements so that Plaintiff and the Class members would accept and fail to challenge Wells Fargo's decision.

61. Wells Fargo's actions unilaterally imposed reliance on its statements by Plaintiff and the Class members. Plaintiff and the other Class members had no choice but to accept Wells Fargo's decision or undergo the appeals process. In the alternative, Wells Fargo's misrepresentations were objectively material to a reasonable consumer such that reliance may be presumed as a matter of law.

62. Plaintiff relied on Wells Fargo's misrepresentations by not challenging Wells Fargo's suspension of her account until she saw a newspaper article informing her of lawsuits against Wells Fargo relating to Wells Fargo's HELOC suspensions, at which time she contacted her attorneys.

63. In furtherance of its fraudulent scheme, Wells Fargo customer service representatives intentionally threatened Plaintiff and other borrowers who called to appeal by stating that Wells Fargo would make the appeals process as painful for the borrower as possible and that challenging Wells Fargo's decision would cause the bank to thoroughly examine each of the customers' accounts.

64. Defendant's misrepresentation of a material fact and reliance on it caused Plaintiff and the Class members damages in the form of being denied the use and enjoyment of and access to their bargained-for HELOC funds at a crucial time, finance charges, annual fees, lost interest, increased cost of credit, early termination fees and other costs and damages.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in her favor and against Defendant as follows:

(a) Certifying the action as a class action and designating Plaintiff and her counsel as representatives of the Class;

(b) Entering declaratory judgment under 27 U.S.C. § 2201 on Count I that Defendant's

HELOC reductions violate federal law;

(c) Awarding statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Count II;

(d) Awarding actual damages on Counts II, III, and IV for Plaintiff and the Class including but not limited to damages to compensate the Plaintiff and Class's loss of the use and enjoyment of and access to their bargained-for credit at a crucial time, returned/dishonored check fees, finance charges, increased cost of credit, annual fees, lost interest, early termination fess and other costs and damages;

(e) Awarding preliminary and permanent equitable and injunctive relief for Plaintiff and the Class, including enjoining Defendant from further violations of Regulation Z and requiring Wells Fargo lift HELOC suspensions and restore HELOC credit limits on all accounts wrongfully suspended or reduced,

(f) Awarding punitive, actual, and exemplary damages on Count IV;

(g) Awarding pre- and post-judgment interest, costs and reasonable attorneys' fees; and

(h) Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: April 26, 2010

Respectfully submitted,

MARIKA HAMILTON, individually and on behalf of a class of similarly situated individuals

By: /s/ Sean Reis
One of Plaintiffs' Attorneys

Sean Reis (SBN 184044)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
949-459-2124 (phone)
949-459-2123 (fax)
sreis@edelson.com

Jay Edelson (*pro hac vice* to be filed)
Steven Lezell (admitted *pro hac vice*)
Evan Meyers (admitted *pro hac vice*)
EDELSON MCGUIRE, LLC
350 N. LaSalle Drive, Suite 1300

Chicago, IL 60654
312-589-6373 (phone)
312-589-6378 (fax)
jedelson@edelson.com
slezell@edelson.com
emeyers@edelson.com

David C. Parisi (SBN 162248)
Suzanne Havens Beckman (SBN 188814)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
818-990-1299 (phone)
Fax: 818-501-7852 (fax)
dcparisi@parisihavens.com
shavens@parisihavens.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2010, I electronically filed the foregoing *PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND* with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to the following parties by operation of the Court's electronic filing system:

Mark Douglas Lonergan
Kalama M. Lui-Kwan
SEVERSON & WERSON
One Embarcadero Center, 26th Floor
San Francisco, CA 94111
Phone: (415) 398-3344
Fax: (415) 956-0439
mdl@severson.com
kml@severson.com

/s/ Sean P. Reis