SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON (*Pro Hac Vice*)
jedelson@edelson.com
STEVEN L. WOODROW (*Pro Hac Vice*)
swoodrow@edelson.com
EVAN M. MEYERS (*Pro Hac Vice*)
emeyers@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*ATTORNEYS FOR PLAINTIFF*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MARIKA HAMILTON, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A.,<br><br>     Defendant. | No. 09-cv-4152-CW<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Location: Courtroom 2, 4th Floor<br>1301 Clay Street<br>Oakland, CA 94612-5212<br>Date: January 12, 2012<br>Time: 2:00 p.m.<br><br>Honorable Claudia A. Wilken |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that on January 12, 2012 at 2:00 p.m., or at such other time as may be set by the Court, Plaintiff will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of a class action settlement reached by the Parties, in Courtroom 2, Fourth Floor, 1301 Clay Street, Oakland, CA 94612, before the Honorable Claudia A. Wilken.

Plaintiff seeks preliminary approval of the Class Action Settlement Agreement attached to this Motion as Exhibit A, certification of the proposed Settlement Classes, appointment of the Class Representatives, and appointment of Plaintiff's counsel as Class Counsel. The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, oral argument of counsel, all documents in the record, and any other matter that may be submitted at the hearing.

Dated: December 7, 2011                        Respectfully Submitted,

MARIKA HAMILTON, individually and on behalf of Classes of similarly situated individuals,


                                                    /s/ Steven Lezell Woodrow

JAY EDELSON (*Pro Hac Vice*)
jedelson@edelson.com
STEVEN L. WOODROW (*Pro Hac Vice*)
swoodrow@edelson.com
EVAN M. MEYERS (*Pro Hac Vice*)
emeyers@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.   NATURE OF THE LITIGATION ........................................................................ 6

   A.  Investigation into Mass HELOC Suspensions ...................................... 6

   B.  The Underlying Class Actions ............................................................... 6

   C.  Preliminary Settlement Negotiations and Mediation ........................... 8

   D.  Wells Fargo's Position ........................................................................ 10

II.  TERMS OF THE SETTLEMENT AGREEMENT ......................................... 10

   A.  Class Definitions ................................................................................. 10

      1.  The "Financial Circumstances Class" ....................................... 10

      2.  The "Property Value Class" ....................................................... 11

      3.  The "Former Customer Class" ................................................... 11

   B.  Settlement Benefits ............................................................................. 11

      1.  Notice of Right to Seek Reinstatement ...................................... 11

      2.  Proactive Account Reinstatement Reviews ............................... 12

      3.  Limitation on Use of AVMs ....................................................... 12

      4.  Service Assurances .................................................................... 12

      5.  Enhanced Property Value Notices .............................................. 12

      6.  Benefits Specific to Former Customers ..................................... 12

   C.  Other Relief ......................................................................................... 12

      1.  Payment of Notice and Administrative Fees .............................. 13

      2.  Compensation to the Class Representatives ............................... 13

      3.  Payment of Attorneys' Fees and Expenses ............................... 13

   D.  Release ................................................................................................. 13

III. THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED ............ 14

   A.  The Proposed Settlement Classes Are Ascertainable ........................ 14

   B.  The Proposed Settlement Classes are Comprised of Hundreds of Thousands
      of Members So that Joinder of Individual Plaintiffs is Impractical ................ 15

   C.  The Settlement Classes Share Common Issues of Law and Fact ....... 16

D.  The Named Plaintiffs' Claims Are Typical of Those of The Settlement Class Members ................................................................................................ 17

E.  Proposed Class Counsel and the Named Plaintiffs Have and Will Continue to Fairly and Adequately Represent the Interests of the Settlement Classes ...... 18

F.  The Proposed Settlement Classes Meets the Requirements of Rule 23(b)(2) and Rule 23(b)(3) ........................................................................................ 19

   1.  The Financial Circumstances Class and Property Value Class should be certified under Rule (23)(b)(2) .............................................................. 19

   2.  The Former Customer Class should be certified under Rule (23)(b)(3) ............. 21

      a.  *Common questions of law and fact predominate* ............................ 21

      b.  *This class action, and especially this class action settlement, is the superior method for adjudicating the HELOC suspension claims at issue* ..... 21

IV.  THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL ............................................................................. 22

V.  THE PROPOSED SETTLEMENT FALLS WITHIN THE RANGE OF FINAL APPROVAL AND THUS WARRANTS PRELIMINARY APPROVAL ............... 24

A.  The Settlement Enjoys a Presumption of Fairness in Light of the Process Used to Achieve It ................................................................................... 25

B.  The Settlement Benefits are an exceptional result for Settlement Class Members ................................................................................................. 27

VI.  THE PROPOSED PLAN OF CLASS NOTICE ............................................. 29

A.  U.S. Mail Notice ................................................................................... 30

B.  Internet Publication .............................................................................. 30

C.  CAFA Notice ........................................................................................ 30

CONCLUSION ................................................................................................ 31

1

## **Table of Authorities**

2

United States Supreme Court Cases:

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .............................................. 13, 14, 21, 22

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................................... 30

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ----, 2011 WL 2437013 (June 20, 2011).............. 16, 20

United States Circuit Court of Appeals Cases:

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................................ 17

*Blake v. Arnett*, 633 F.2d 906 (9th Cir. 1981) ............................................................................... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).............................. 16, 17, 18, 21, 25

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................... 26

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ............................... 13

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................................................ 25

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008)......................................................... 25

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).................................. 25

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) .................................................................. 16

*Pierce v. Cnty. of Orange*, 526 F.3d 1190 (9th Cir. 2008)......................................................... 21

*Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168 (9th Cir. 2010) ........................... 17, 22

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)........................................ 19

United States District Cases:

*Barefield v. Chevron U.S.A., Inc.*, No. C 86-2427 TEH, 1987 WL 65054
(N.D. Cal. Sept. 9, 1987) ............................................................................................................. 17

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ............................................ 14, 15

*Gardner v. Shell Oil Co.*, No. C-09-5876-CW, 2011 WL 1522377
(N.D. Cal. Apr. 21, 2011) ........................................................................................................ 14, 15

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996) ....................................................... 14

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....................................................... 17

*Hickman v. Wells Fargo Bank, N.A.*, 683 F.Supp.2d 779 (N.D. Ill. 2010) ............................ 7, 24

*Hickman v. Wells Fargo Bank NA*, No. 09 C 5090, 2010 WL 3833669
(N.D. Ill. May 11, 2010) ............................................................................................................... 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re HP Laser Printer Litig.*, No. SACV 07-0667 AG RNBX, 2011 WL 3861703
(C.D. Cal. Aug. 31, 2011) ............................................................. 26

*In re Indep. Energy Holdings PLC*, No. 00-CV-6689, 2003 WL 22244676 (S.D.N.Y 2003)...... 25

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................. 24

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) ........................................ 15

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) ........................................ 14

*Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437 (N.D. Cal. 2009) ........................................ 21

*Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) .................................................. 14

Statutes

Fed. R. Civ. P. 23 .............................................................................................................*passim*

28 U.S.C § 1715 .............................................................................................................. 31

Miscellaneous:

Alba & Conte, 4 Newberg on Class Actions (4th ed. 2002) ........................................ 17, 24, 25, 30

5 James Wm. Moore et al., Moore's Federal Practice (3d ed. 2001) ........................................ 14

Manual for Complex Litigation (3d ed. 1995) ............................................................... 24

Manual for Complex Litigation (4th ed. 2004) ............................................................ 13, 25

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y. U. L.
Rev. 97 (2009) ......................................................................................................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

This proposed class action settlement is the culmination of over two years of contentious and hard fought litigation, nearly a year of settlement negotiations, and the resolution of four putative nationwide class action lawsuits pending in federal courts in both California and Illinois.[1] Plaintiffs alleged that Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") suspended or reduced its borrowers' Home Equity Lines of Credit ("HELOCs") in violation of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, its implementing regulation, Regulation Z, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "ICFA"), and in breach of the terms of its HELOC contracts.

The five named Plaintiffs—Marika Hamilton, Michael Hickman, Jeffrey Yellin, Ellen Yellin and Brendan O'Leary (collectively "Plaintiffs")—brought four separate lawsuits following Wells Fargo's decision to suspend their respective HELOCs. The Plaintiffs each alleged that Wells Fargo used HELOC suspension standards and practices that violate TILA and Regulation Z, and breach their HELOC contracts. Specifically, Ms. Hamilton alleged that Wells Fargo improperly and falsely claimed that her financial circumstances had changed so as to allow Wells Fargo to suspend[2] her account from further draws. Mr. Hickman, the Yellins, and Mr. O'Leary alleged that Wells Fargo used computerized automated valuation models ("AVMs") improperly so as to trigger Wells Fargo's ability to suspend their accounts. Wells Fargo denied the allegations and moved to dismiss each of the actions. The Parties have briefed several motions, including motions to dismiss that were granted in part and denied in part by the various Courts, and have

---

[1]     These actions are *Hickman v. Wells Fargo Bank, N.A.*, No. 09-cv-5090 (N.D. Ill, filed Aug. 19, 2009); *Yellin v. Wells Fargo Bank, N.A.*, No. 10-cv-2665 (N.D. Cal., removed June 18, 2010); and *O'Leary v. Wells Fargo Bank, N.A.*, No. 10-cv-1913 (E.D. Cal., filed July 20, 2010) (collectively "underlying class actions"). Contemporaneously with this Motion, and for the purposes of effectuating the Settlement, Plaintiff Hamilton has filed a motion for leave to file a Consolidated Amended Class Action Complaint joining the Plaintiffs in the underlying class actions as named Plaintiffs in a single proceeding before this Court.

[2]     Banks use the terms "restricted," "blocked," "treated," "suspended," or "reduced" to describe an action prohibiting customers from accessing their HELOCs.

1 exchanged formal, informal and confirmatory discovery.

2      At the direction of this Court, as well as Judge St. Eve presiding over the *Hickman* matter,

3 the Parties engaged in a settlement process early on in the litigation to determine whether a

4 resolution short of a hearing on the merits could be reasonably achieved.  The settlement process

5 began with preliminary discussions and face-to-face meetings where the Parties exchanged

6 information—including thousands of pages of discovery—together with ideas regarding a

7 potential settlement framework.

8      The Parties' discussions culminated in a formal mediation session before the Honorable

9 Edward Infante (Ret.) on October 20, 2010.  After several hours of arm's length negotiations, the

10 Parties were able to make significant progress such that the mediation concluded with Wells

11 Fargo's counsel conditionally agreeing to review and consider a proposed settlement framework

12 with respect to relief to the Settlement Class Members[3].  Judge Infante agreed to oversee the

13 Parties as they continued their talks, which thereafter resulted in an agreement with respect to the

14 substantive relief to the Settlement Class Members.  The Parties thereafter engaged in a second

15 mediation session with Judge Infante regarding attorneys' fees, costs, and class representative

16 incentive awards.  The Parties were unable to reach an agreement at the mediation.  Over the

17 weeks that followed, however, Judge Infante engaged the Parties in a series of telephonic meetings

18 that concluded in him making a mediator's recommendation—which both sides ultimately

19 accepted—regarding attorneys' fees, costs, and class representative incentive awards.

20      The result of this effort is a particularly strong and comprehensive nationwide Class Action

21 Settlement Agreement worthy of this Court's approval.  (*See* "Settlement Agreement," a copy of

22 which is attached to this Motion as Exhibit A.)  As explained below, the Settlement Agreement is

23 an exceptional and unprecedented result for the Settlement Class Members.  First, all Class

24 members who are current customers will receive a notice advising them of their right to seek

25 reinstatement of their suspended or reduced HELOCs under Wells Fargo's current HELOC

26 _____

27 [3]     Unless otherwise stated, capitalized terms shall have the meaning set forth in the

28 Settlement Agreement.

suspension standards, which have been refined since the time Wells Fargo first suspended their HELOCs so as to be more favorable to customers.  Additionally, Wells Fargo agrees that during the 12 months following final approval, it will perform four rounds of "proactive account reinstatements," which in the past have resulted in customers gaining significant levels of restored access to their HELOCs.  Wells Fargo further agrees not to use any AVMs that are older than 90 days in connection with any decision to restrict or "treat" HELOCs and to refrain from changing its policies and procedures for restricting and reinstating HELOCs unless such changes are beneficial to borrowers.  Wells Fargo has also agreed to specific enhancements in its HELOC suspension notices, together with a comprehensive letter to customers who seek additional information, so that borrowers will have sufficient information to decide whether or not to appeal their HELOC suspension.  Finally, former customers of Wells Fargo who closed their accounts in response to Wells Fargo's suspension of their HELOCs shall be entitled to a cash award of $150 upon submission of a simple claim form verifying that was the reason they closed their accounts.

While similar HELOC suspension cases have been brought against other national banks in the wake of the financial crisis and ensuing collapse of the housing market,[4] this is the first comprehensive nation-wide settlement of its kind.  The exceptional results achieved by the Settlement Agreement are well beyond those required for preliminary approval.  Accordingly, Plaintiffs move the Court to preliminarily approve the instant settlement, certify the proposed Classes, appoint the named Plaintiffs as Class Representatives and appoint Jay Edelson, Steven L. Woodrow, and Evan M. Meyers as Class Counsel.  For the convenience of the Court, proposed dates and deadlines leading to a final approval hearing are provided in the proposed order separately submitted to the Court.

---

[4]    *See, e.g., In re JPMorgan Chase Bank, N.A., Home Equity Line of Credit Litig.*, No. 10-cv-3647, MDL 2167 (N.D. Ill., centralized June 7, 2010); *Schulken v. Washington Mutual Bank*, No. 09-cv-2708 (N.D. Cal., filed June 18, 2009); *In re Citibank HELOC Reduction Litig.*, 09-cv-0350MMC (N.D. Cal., filed Jan. 26, 2009).

1    **I.    NATURE OF THE LITIGATION**

2         **A.    Investigation Into Mass HELOC Suspensions**

3         In the wake of the financial crisis and collapse of the housing market in late 2008,

4    proposed Class Counsel began receiving and analyzing hundreds of complaints from HELOC

5    customers asserting that their respective HELOC lenders had unilaterally suspended their accounts

6    without justification.  (*See* Declaration of Steven L. Woodrow (cited hereinafter as Woodrow

7    Decl.) ¶ 2, a true and accurate copy of which is attached as Exhibit B.)  These complaints and

8    inquiries prompted proposed Class Counsel to engage in a wide-ranging investigation into the

9    entire banking industry's HELOC suspensions to compare and contrast various banks' suspension

10   policies and practices and to also determine which banking practices were in compliance with

11   TILA, Regulation Z, and the borrowers' HELOC contracts.  (*Id.* at ¶ 3.)  To date, proposed Class

12   Counsel's investigation has included the gathering of information and documents from hundreds

13   of aggrieved homeowners whose HELOCs have either been suspended or reduced by the banks,

14   including Wells Fargo, as well as a review of thousands of pages of formal, informal, and

15   confirmatory discovery produced through the settlement process.  (*Id.* at ¶¶ 2-3.)  Proposed Class

16   Counsel's investigation also included collaborating with federal and state lawmakers, regulators

17   and other public officials in an effort to share information and bring to light the legal issues and

18   impact of unjustified HELOC suspensions and reductions.  (*Id.* at ¶ 4.)

19        As a result of this comprehensive investigation, proposed Class Counsel were retained by

20   the named Plaintiffs in this case as well as by other homeowners aggrieved by such national

21   lenders as JPMorgan Chase Bank, N.A., Citibank, N.A., National City Bank, GMAC Mortgage

22   LLC, and OneWest Bank, F.S.B.  (*Id.* at ¶ 5.)

23        **B.    The Underlying Class Actions**

24        As this Court is aware, on September 8, 2009, Marika Hamilton brought a putative class

25   action against Wells Fargo in this Court.  Ms. Hamilton alleged that Wells Fargo suspended its

26   customers' HELOCs based on pretextual claims that their financial circumstances had suffered

27   adverse material changes so as to trigger Wells Fargo's ability under TILA to suspend their

28   accounts.  Ms. Hamilton's complaint alleged that her income never materially changed and that

1  Wells Fargo had violated TILA and Regulation Z, breached its HELOC contracts, and violated

2  other state laws in suspending her account and those of the other class members.  The Parties fully

3  briefed, and the Court ruled on, two Motions to Dismiss.  (Dkts. 39, 59.)

4        Prior to the filing of Ms. Hamilton's case, on August 19, 2009, Michael Hickman brought

5  a nationwide putative class action against Wells Fargo in the United States District Court for the

6  Northern District of Illinois, Case No. 09-cv-5090, which was assigned to the Honorable Amy St.

7  Eve.  Hickman alleged that Wells Fargo unlawfully and improperly suspended and reduced its

8  customers' HELOCs based on pretextual claims that the customers' home values had significantly

9  declined.  Specifically, Hickman alleged that Wells Fargo used improper AVMs to falsely claim

10  that its borrowers' home values had significantly declined so as to justify HELOC suspensions—

11  violating TILA, Regulation Z, and the Illinois Consumer Fraud and Deceptive Business Practices

12  Act, 815 ILCS 505/2 *et seq.*, and breaching its contracts with the class members.  The complaint

13  sought monetary, declaratory and injunctive relief.

14        The Parties briefed two Motions to Dismiss, both of which Judge St. Eve granted in part

15  and denied in part in two opinions.  *See Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779,

16  782 (N.D. Ill. 2010) (decided Jan. 26, 2010), *Hickman v. Wells Fargo Bank NA*, No. 09 C 5090,

17  2010 WL 3833669 (N.D. Ill. May 11, 2010).  The Parties also briefed a Motion to Strike certain of

18  Wells Fargo's affirmative defenses, which resulted in the withdrawal of several defenses.  Both

19  Parties also produced and reviewed voluminous documents and information during the discovery

20  process.  (Woodrow Decl. ¶ 3.)

21        On May 20, 2010, Jeffrey and Ellen Yellin filed a putative class action against Wells Fargo

22  in the Superior Court of California, San Francisco County, Case No. CGC 10-500019.  On June

23  18, 2010, Defendant removed the case to the United States District Court for the Northern District

24  of California, Case No. 4:10-cv-2665-PJH, where it was assigned to the Honorable Phyllis J.

25  Hamilton.  The Yellins' complaint sought relief on behalf of a class of Wells Fargo California

26  customers alleging, *inter alia*, that Wells Fargo violated the UCL and breached its HELOC

27  contracts when it suspended and reduced the class members' HELOCs based on pretextual claims

28  that the customers' home values had significantly declined.  (Dkt. 1.)  The parties fully briefed the

1   Yellins' Motion to Remand, which Judge Hamilton denied under 28 U.S.C. 1332(a) finding

2   complete diversity and that it was more likely than not over $75,000 was in controversy regarding

3   the Yellin's individual claims.  (Dkt. 25.)  Wells Fargo also filed a Motion to Dismiss the Yellins'

4   complaint with prejudice, which remains pending.  (Dkt. 29.)

5        On July 20, 2010, Brendan O'Leary brought a putative class action against Wells Fargo in

6   the United States District Court for the Eastern District of California, Case No. 2:10-cv-01913-

7   MCE-GGH.  The case was assigned to the Honorable Morrison C. England, Jr.  Mr. O'Leary's

8   class action complaint sought relief on behalf of a nationwide class of Wells Fargo HELOC

9   customers, alleging that Defendant violated TILA, Regulation Z, the UCL, and breached its

10  HELOC contracts by suspending and reducing its customers' HELOCs based on pretextual claims

11  that the customers' home values had significantly declined.  (Dkt. 1.)  Wells Fargo has filed a

12  Motion to Dismiss O'Leary's complaint in its entirety.  As with the Motion to Dismiss in the

13  Yellin matter, this case also remains pending but on hold while this Court considers the Parties'

14  Settlement Agreement.  (Dkt. 14.)

15       **C.    Preliminary Settlement Negotiations and Mediation**

16       The Parties had initial settlement discussions early on in these cases to discuss the legal

17  landscape generally and their respective views on the cases in particular.  Although these initial

18  talks did not result in a settlement, they succeeded in opening a helpful dialogue between counsel

19  for the Parties.

20       In August 2010, at the direction of this Court (and also Judge St. Eve presiding over the

21  *Hickman* case), the Parties scheduled a mediation for October 2010, while otherwise moving

22  forward with litigation.  (Woodrow Decl. ¶ 6.)  Prior to the mediation, in September 2010,

23  proposed Class Counsel met with counsel for Wells Fargo in San Francisco.  The Parties discussed

24  a potential path for settlement whereby Wells Fargo would produce additional information and

25  clarify questions that Plaintiffs' counsel had regarding the bank's HELOC policies, and Plaintiffs'

26  Counsel would then analyze whether any of Wells Fargo's policies continued to be objectionable.

27  (*Id*. at 7.)

28

1        In accordance with this approach, proposed Class Counsel reviewed thousands of

2   documents produced by Wells Fargo that revealed that Wells Fargo periodically reviewed and

3   refined its HELOC policies, including following the filing of the underlying class actions.  (*Id*. at ¶

4   7.)  These refinements represented significant steps toward protecting consumers against the risk

5   of unjustified suspensions and toward restoring access to credit.  (*Id*. at 7.)  Leading up to

6   mediation, Proposed Class Counsel engaged in numerous follow-up discussions with Wells

7   Fargo's counsel regarding aspects of the policies and procedures that required further explanation

8   and clarification.  (*Id*. at 8.)  After proposed Class Counsel had reviewed sufficient documents and

9   materials to meaningfully analyze Wells Fargo's current HELOC suspension policies and

10  practices, the Parties proceeded to the first mediation session.  (*Id*. at ¶¶ 8-9.)

11       On October 20, 2010, the Parties met in San Francisco for a mediation session with the

12  Honorable Edward Infante (Ret.) of JAMS.  (*Id*. at ¶ 9.)  During the mediation session, the Parties

13  exchanged additional information, and Wells Fargo provided further clarification with respect to

14  its current HELOC suspension and reinstatement practices.  (*Id*.)  Following a full day of arm's

15  length negotiations, the Parties made significant progress with respect to a potential settlement

16  framework, but were unable to reach an agreement at the mediation.  (*Id*.)  However, the Parties

17  agreed that Wells Fargo would consider the framework and agree to continue working towards a

18  resolution with the help of Judge Infante.  (*Id*.)  During the several months that followed, and with

19  Judge Infante's oversight, the Parties continued negotiating and exchanging proposals and several

20  drafts of the settlement agreement.  In June 2011, the Parties reached an agreement in principle

21  with respect to the relief to be made available to the Settlement Class Members.  (*Id*. at ¶ 10.)

22       Only after the Parties agreed upon the relief for the Settlement Classes did the Parties

23  begin negotiating incentive awards for the named Plaintiffs and attorneys' fees for proposed Class

24  Counsel.  (*Id*. at ¶ 11.)  On June 15, 2011, the Parties participated in a second full-day mediation

25  session with Judge Infante.  (*Id*.)  The Parties were unable to reach an agreement on the remaining

26  issues at the second mediation.  (*Id*.)  However, Judge Infante continued working with the Parties

27  and engaged both Parties separately by telephone to discuss the fee and incentive award issues.

28

1  (*Id.*)  Ultimately, the Parties reached an impasse, at which point Judge Infante made a mediator's

2  proposal as to incentive awards and attorneys' fees, which both Parties accepted.  (*Id.*)

3      Contemporaneously with this Motion for Preliminary Approval, and solely for settlement

4  purposes, Plaintiff Hamilton filed an unopposed Motion for Leave to File a Consolidated

5  Amended Class Action Complaint ("Complaint") on behalf of all five named representatives.  The

6  other Courts presiding over the *Hickman*, *Yellin*, and *O'Leary* matters have all been apprised of

7  the Settlement Agreement and the Parties' intention to seek preliminary approval from this Court.

8  (*Id.* at ¶ 12.)

9      **D.      Wells Fargo's Position**

10     Wells Fargo has denied and continues to deny any wrongdoing or that it committed any of

11 the wrongful acts or violations of law or duty alleged in the Complaint.  (Ex. A, Recital F.)  Wells

12 Fargo contends that it has acted properly in all regards in connection with the suspensions and

13 reductions of its customers' HELOCs, whether based on an alleged decline in property value, or a

14 purported adverse change in the borrowers' financial circumstances and that it has strong,

15 meritorious defenses to the claims alleged in the Complaint.  Nonetheless, Wells Fargo has agreed

16 to settle the case in the manner and upon the terms and conditions set forth in the attached

17 Settlement Agreement.  (Ex. A, Recital G.)

18 **II.      TERMS OF THE SETTLEMENT AGREEMENT**

19     The key terms of the Settlement Agreement are briefly summarized as follows:

20     **A.      Class Definitions**

21     For the purposes of settlement only, the Parties have agreed to the certification of the

22 following three classes ("Settlement Classes" or "Classes"):

23         1.      The "Financial Circumstances Class":

24     All persons in the United States from January 1, 2008 to June 30, 2011 whose Wells Fargo

25 HELOC accounts were restricted or reduced by Wells Fargo based on a claim by Wells Fargo that

26 the borrower's financial circumstances had experienced an adverse material change to justify

27 treatment of the borrower's account.

28

2.    The "Property Value Class":

All persons in the United States from July 1, 2008 to June 30, 2011 whose Wells Fargo HELOC accounts were restricted or reduced based on a claim by Wells Fargo that the value of the property securing the HELOC had experienced a significant decline in value to justify treatment of the borrower's account.

3.    The "Former Customer Class":

All persons in the United States from January 1, 2008 to June 30, 2011 who closed their Wells Fargo HELOC accounts following a restriction or reduction of the account by Wells Fargo based upon a claim by Wells Fargo that there has been a material adverse change of the borrower's financial circumstances, or a significant decline in the value of the property securing the HELOC, and who incurred a Deferred Origination Fee as a result of the closure.

Excluded from the Classes are the following:  Wells Fargo; the Claims Administrator; any corporate parent, subsidiary, and affiliate of Wells Fargo; any judge presiding over this case or over any of the underlying actions; and the immediate family members of any excluded person(s).

Collectively, the members of all three Settlement Classes are referred to as the "Settlement Class Members" or "Class Members"

**B.    Settlement Benefits**

Wells Fargo shall provide the following relief to the Settlement Class Members:

1.    Notice of Right to Seek Reinstatement.  A key feature of the Settlement Agreement is the requirement that Wells Fargo provide a notice to all Settlement Class Members advising them of their right to request reinstatement of their suspended or restricted HELOC accounts under Wells Fargo's revised HELOC policies.  The language in the notice will state that Wells Fargo's policies for reinstatement of HELOCs may be different from the criteria for suspending or reducing accounts which were in effect at the time the HELOC accounts were initially treated, and that customers have the right to request reinstatement under the currently applicable policies and procedures.  (Ex. A, § 3.1(a).)

2.    Proactive Account Reinstatement Reviews.  For a period of 12 months following final approval, Wells Fargo agrees to conduct four additional rounds of proactive

1  reinstatements on HELOCs that were suspended or reduced based on either a material adverse

2  change in financial circumstances of the borrowers or a significant decline in the value of homes

3  securing the HELOCs.  (Ex. A, § 3.1(b).)

4          3.   <u>Limitation on Use of AVMs</u>.  For a period of 12 months following final

5  approval, Wells Fargo agrees to not use an AVM valuation that is older than 90 days in connection

6  with any decision to restrict HELOCs.  (Ex. A, § 3.1(c).)

7          4.   <u>Service Assurances</u>.  For a period of 12 months following final approval,

8  Wells Fargo agrees not to make any material changes to its existing policies and procedures for

9  restricting HELOCs based upon either a material adverse change in financial circumstances or a

10  decline in the equity cushion caused by a decline in the value of the property securing the HELOC,

11  as well as policies and procedures for reinstating suspended and reduced HELOCs, unless such

12  changes are beneficial to borrowers.  (Ex. A, § 3.1(d).)

13          5.   <u>Enhanced Property Value Notices</u>.  For a period of 12 months following

14  final approval, when the Property Value Class members request additional information about the

15  restriction or reinstatement of their HELOCs, Wells Fargo will send such borrowers a detailed

16  letter with additional information helpful to assess reinstatement options in the form attached to

17  the Settlement Agreement as Exhibit 3.  In addition, Wells Fargo will modify the letter it uses to

18  notify such borrowers that their HELOCs have been restricted to specifically disclose the

19  borrowers' ability to request additional information.  (Ex. A, § 3.1(e).)

20          6.   <u>Benefits Specific to Former Customers</u>.  Former Customer Class members

21  who submit completed claim forms verifying that they closed their HELOC accounts in response

22  to Wells Fargo's suspension—based upon a material adverse change in financial circumstances or

23  a significant decline in the value of the property securing the HELOC—shall be entitled to a cash

24  award of $150.00.  (Ex. A, § 3.3.)

25  **C.    Other Relief**

26       In addition to the settlement benefits discussed above, Wells Fargo has agreed to provide

27  the following relief:

28

1          1.      <u>Payment of Notice and Administrative Fees</u>:  All settlement administration

2    expenses will be paid by Wells Fargo.  (Ex. A, § 1.3.)

3          2.      <u>Compensation to the Class Representatives</u>:  Wells Fargo has agreed to pay,

4    subject to approval of the Court, an incentive award to the named Plaintiffs in the total amount of

5    $30,000 divided in five equal parts (one award for each named plaintiff) as follows:  $6,000 to Ms.

6    Hamilton, $6,000 to Mr. Hickman, $6,000 to Jeffery Yellin, $6,000 to Ellen Yellin, and $6,000 to

7    Mr. O'Leary.  (Ex. A, § 10.3.)

8          3.      <u>Payment of Attorneys' Fees and Expenses</u>: Under the Settlement

9    Agreement, and consistent with Judge Infante's proposal, Wells Fargo has agreed not oppose

10   proposed Class Counsel's request for $1,470,000 for attorneys' fees and reimbursement of

11   expenses, and agrees that these amounts are reasonable.  (Ex. 1, § 10.1.)  The requested fees and

12   reimbursements are subject to Court approval and Proposed Class Counsel will provide

13   appropriate support for the requested amounts prior to final approval and, consistent with, *In re*

14   *Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010), prior to the deadline for

15   filing objections.

16        **D.**     **Release**

17        In exchange for the relief provided above, and upon the entry of a final order approving

18   this Settlement, Wells Fargo and each of its related affiliates and entities will be released from any

19   claims, whether know or unknown, arising out of or relating to Wells Fargo's HELOC treatment

20   policies, systems, standards and procedures, including, without limitation, its HELOC account

21   restrictions, credit limit reductions, and reinstatement standards and processes, that were or could

22   have been alleged in the Complaint or the underlying class action complaints of the named

23   Plaintiffs.  (*See* Ex. A, §§ 1.27-1.29, § 4 for the full release.)

24   **III.**    **THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED.**

25        Before granting preliminary approval of a settlement, the Court must determine that the

26   proposed Classes are proper for settlement purposes, and thus appropriate for certification.

27   Manual for Complex Litigation § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S.

28   591, 620 (1997).  Certification of an ascertainable class is proper when the plaintiff demonstrates

1  that the proposed class and proposed class representative meet the following prerequisites of Rule

2  23(a): numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P.

3  23(a)(1-4).  Upon meeting the requirements of Rule 23(a), a plaintiff seeking class certification

4  must also meet at least one of the three provisions of Rule 23(b).  Fed. R. Civ. P. 23(b); *Blake v.*

5  *Arnett*, 663 F.2d 906, 912 (9th Cir. 1981).

6       As explained below, certification is sought pursuant to Rule 23(b)(2) for the Property

7  Value Class and Financial Circumstances Class.  Rule 23(b)(2) provides that a class action can be

8  maintained where "the party opposing the class has acted or refused to act on grounds that apply

9  generally to the class, so that final injunctive relief or corresponding declaratory relief is

10 appropriate respecting the class as a whole."  For the Former Customer Class, Plaintiffs seek

11 certification under Rule 23(b)(3) and therefore must additionally demonstrate that common

12 questions of law or fact predominate over individual issues and that maintaining the suit as a class

13 action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at

14 615-16; *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 364-65 (N.D. Cal. 2010).

15      When determining whether to certify a class action for settlement purposes, a court should

16 accept the allegations of the plaintiff's complaint as true, but may consider matters beyond the

17 pleadings to determine if the claims are suitable for resolution on a class-wide basis.  *Celano v.*

18 *Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).  In this case, both the pleadings and the

19 formal and confirmatory discovery produced show that each of the prerequisites for certification

20 are met in this case with respect to each of the proposed Settlement Classes.

21      **A.      The Proposed Settlement Classes are Ascertainable.**

22      The first requirement for certification is that the proposed classes are ascertainable.  *Haley*

23 *v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996).  A class definition is sufficient if it is

24 "definite enough so that it is administratively feasible for the court to ascertain whether an

25 individual is a member."  *Gardner v. Shell Oil Co.*, No. C-09-5876-CW, 2011 WL 1522377, at *3

26 (N.D. Cal. Apr. 21, 2011) (citing *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal.

27 1998); *see also* 5 James Wm. Moore et al., Moore's Federal Practice, ¶ 23.21[1] (3d ed. 2001)

28 ("The identity of class members must be ascertainable by reference to objective criteria.").

1    Objective criteria may include a defendant's business records.  *See, e.g., Gardner*, 2011 WL

2    1522377, at *4 ("Defendants do not dispute that members of the proposed class can be identified

3    from their timekeeping and payroll records"); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610,

4    617-18 (C.D. Cal. 2008) (the class could "be determined with reference to Defendant's records").

5            Wells Fargo's records indicate which customers had their HELOCs suspended or reduced

6    based upon either a claim that the borrower's financial circumstances had significantly

7    deteriorated or that the borrower's home value had significantly declined.  Likewise, Wells

8    Fargo's records include information regarding which former customers incurred a deferred

9    origination or other fee so as to warrant inclusion in the Former Customer Class.  Accordingly,

10   ascertainability is not at issue with respect to any of the Proposed Settlement Classes.

11       **B.      The Proposed Settlement Classes are Comprised of Hundreds of Thousands of Members So that Joinder of Individual Plaintiffs is Impractical.**

12           The second prerequisite of class certification is numerosity, which requires "the class [be]

13   so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  To satisfy this

14   requirement there is no "specific" number required, nor is the plaintiff required to state the "exact"

15   number of potential class members.  *Celano*, 242 F.R.D. at 548.  Generally, the numerosity

16   requirement is satisfied when the class comprises 40 or more members.  *See id.* at 549.

17           Here, the proposed Settlement Classes collectively include tens of thousands of HELOC

18   customers, readily satisfying the numerosity requirement for each Class.  (Woodrow Decl. ¶ 13.)

19   Although the number of customers[5] who fall into the Former Customer Class is concededly much

20   lower than those of the Financial Circumstances or Property Value Classes, the total number

21   ultimately satisfies the commonly recognized thresholds necessary to satisfy numerosity for each

22   proposed Class.

23

24

25   _____

26   [5]        The precise number of former HELOC customers who fall into each of the Classes, including the Former Customer Class remains subject to a protective order.  As with all other

27   information subject to the Order, proposed Class Counsel is prepared to share the number and any other information necessary with the Court during the preliminary approval hearing.

28

**C.     The Settlement Classes Share Common Issues of Law and Fact.**

The third threshold to certification requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality may be demonstrated when the claims of all class members "depend upon a common contention" and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ----, 2011 WL 2437013, at *7, 11 (June 20, 2011); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.")  The common contention must be of such a nature that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 2011 WL 2437013 at *7.  Moreover, the permissive standard of commonality provides that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

In the instant case, the members of each of the Settlement Classes share common claims arising out of the same conduct, having had their HELOCs treated by Wells Fargo allegedly in the absence of an adverse change in their financial circumstances and in the absence of a significant decline in their home values.  The members of each Settlement Class therefore share common legal issues concerning what TILA and Regulation Z require, what their contracts with Wells Fargo provide, and whether the common facts are sufficient to state a claim.  For customers whose HELOCs Wells Fargo suspended based on a claimed material adverse change in financial circumstances, the common questions ask whether Wells Fargo determined whether an actual adverse change in financial circumstances had occurred and, second, whether as a result of such changes it was reasonable to believe that the borrowers would be unable to repay their HELOCs.  Likewise, for customers whose HELOCs were suspended based on a supposed significant decline in property value, the common questions focus on whether Wells Fargo, through its alleged misuse of AVMs and other suspension policies, lawfully determined that its borrowers' home values had significantly declined prior to suspending their HELOCs.

Wells Fargo employed uniform policies with respect to its HELOC suspension programs,

and all of the proposed Settlement Class Members were subjected to the same standards when Wells Fargo considered their HELOCs for possible suspension.  Whether these standards ran afoul of TILA, Regulation Z, and the customers' HELOC agreements (which, like TILA, limit the instances where a creditor can suspend or reduce a HELOC) can be answered in a single proceeding.  Thus, the element of commonality is satisfied.

**D.      The Named Plaintiffs' Claims Are Typical of Those of The Settlement Class Members.**

Rule 23 next requires that the representative plaintiffs' claims are typical of those of the putative class or classes they seek to represent.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that "the interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover North Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Typicality is measured under a permissive standard and does not require that the representative's claims be substantially identical, but only that they are "reasonably coextensive with [the claims] of absent class members."  *Hanlon*, 150 F.3d at 1020.  The test is whether other class members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.  *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (internal quotation omitted); Alba & Conte, 4 Newberg on Class Actions § 3:13 at 327 (4th ed. 2002).  In most cases, "a finding of commonality will ordinarily support a finding of typicality."  *Barefield v. Chevron U.S.A., Inc.*, No. C 86-2427 TEH, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9, 1987); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

All of the named Plaintiffs have suffered the same or similar injury— their HELOCs were suspended.  And their injuries all stem from essentially the same conduct—Wells Fargo's allegedly improper HELOC suspension policies that did not comply with TILA, Regulation Z, or the HELOC contracts.  No allegations are based on conduct unique to the named Plaintiffs— Hamilton had her HELOC suspended, like all other members of the Financial Circumstances Class, based on an allegedly false claim that her financial circumstances had suffered an adverse material change.  The Yellins, Hickman and O'Leary all allege that their HELOCs were suspended

based on allegedly false claims that their homes had significantly declined in value.

As such, the named Plaintiffs' claims for relief under TILA, breach of contract, the UCL and the ICFA are typical, if not wholly identical to those of the proposed Classes, and Rule 23(a)(3)'s requirement for typicality is met.

**E.      Proposed Class Counsel and the Named Plaintiffs Have and Will Continue to Fairly and Adequately Represent the Interests of the Settlement Classes.**

The final Rule 23(a) prerequisite requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, a court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

The named Plaintiffs have no conflicts with the other Class members. Their interests are entirely representative of and consistent with the interests of all members of the proposed Classes—all have allegedly experienced the suspension of their HELOCs either because of the purported adverse change in the financial circumstances (Plaintiff Hamilton) or the claimed significant decline in their home values (Plaintiffs Hickman, the Yellins, and O'Leary). Plaintiffs' active participation in this litigation has ranged from attending in-person meetings with Plaintiffs' counsel and giving interviews to members of the media, to diligently answering written discovery and producing documents, reviewing and commenting on drafts of briefs, and assisting in the legal and factual research to support their claims. Each of the Plaintiffs has demonstrated that they have and will continue to protect the interests of each proposed Class. (Woodrow Decl. ¶ 14.) Finally, none of the Plaintiffs have conflicts with former customers who are the only Class Members to receive cash compensation through the Settlement.

Proposed Class Counsel have regularly engaged in major complex litigation, and have extensive experience in consumer class action lawsuits, and especially those related to the banking industry in general and the HELOC litigation in particular, that are that are similar in size, scope and complexity to the present case. (*Id*. at ¶ 5; *see also* Firm Resumes, Group Exhibit C.)

1    Importantly, proposed Class Counsel are among the leading attorneys in the nation with

2    respect to when financial institutions may suspend or reduce HELOCs under TILA, Regulation Z

3    and the banks' HELOC contracts.  Jay Edelson was appointed interim co-lead class counsel in the

4    Chase HELOC multidistrict litigation involving Chase's HELOC suspensions based on the

5    purported decline in home values.  *See JPMorgan Chase Bank, N.A. Home Equity Line of Credit*

6    *Litig.*, No. 10-cv-3647, MDL 2167, Dkt. 37 (N.D. Ill. July 16, 2010.)  Likewise, Edelson McGuire

7    was appointed interim co-lead counsel in the litigation challenging Citibank's HELOC suspension

8    practices.  *In re Citibank HELOC Reduction Litig.*, No. 09-cv-0350MMC, Dkt. 96 (N.D. Cal.

9    May 18, 2010).  Additionally, Edelson McGuire lawyers have prosecuted similar cases against

10   other industry actors, including National City Bank, OneWest Bank, F.S.B., and GMAC

11   Mortgage, LLC.  (Woodrow Decl. ¶ 5.)  Edelson McGuire lawyers also took the lead in

12   responding to the Federal Reserve Board of Governors' request for public comment on proposed

13   changes to Regulation Z's HELOC suspension rules (*id.* at ¶ 4) and have worked with lawmakers

14   on both sides of the aisle to bring the issue of unjustified HELOC suspensions to light.

15       Accordingly, the named Plaintiffs and proposed Class Counsel will adequately represent

16   the proposed Classes and their interests.

17       **F.    The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(2) and**
                **Rule 23(b)(3).**
18
19       Once the prerequisites of Rule 23(a) have been met, a plaintiff must also

20   demonstrate one of the three requirements of Rule 23(b) in order to certify a proposed class.

21   *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  The primary relief

22   secured for the Property Value Class and Financial Circumstances Class is injunctive in nature,

23   and, accordingly, certification of those Classes is sought under Rule 23(b)(2).  With respect to the

24   Former Customer Class, the relief is predominantly money damages.  As a result, certification is

25   sought under Rule 23(b)(3).

26       1.    The Financial Circumstances Class and Property Value Class should
                be certified under Rule 23(b)(2).

27       As the relief afforded to both the Financial Circumstances Class and the Property Value

28   Class focuses on reforming Wells Fargo's business practices with respect to its HELOC

1   suspensions, credit limit reductions, and appeals, certification of those Classes under Rule 23(b)(2)

2   is appropriate. Rule 23(b)(2) provides that a class action can be maintained where "the party

3   opposing the class has acted or refused to act on grounds that apply generally to the class, so that

4   final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

5   whole."  As the Supreme Court recently explained in *Dukes*, "the key to the (b)(2) class is 'the

6   indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct

7   is such that it can be enjoined or declared unlawful only as to all of the class members or as to

8   none of them.'" 2011 WL 2437013, at *12 (quoting Richard A. Nagareda, *Class Certification in*

9   *the Age of Aggregate Proof*, 84 N.Y. U. L. Rev. 97, 131–32 (2009)).

10          Well Fargo applied its HELOC treatment programs uniformly, acting on grounds that

11   applied to the Class Members as a whole.  Under the terms of the Settlement Agreement, Wells

12   Fargo's conduct is enjoined as to all of the Settlement Class Members, as opposed to just some of

13   them.  Because Wells Fargo's uniform policies as applied to the Financial Circumstances and

14   Property Value Classes as a whole were at the heart of this lawsuit, the Settlement obtains

15   injunctive relief on behalf of all customers.  For a period of time following approval of the

16   Settlement Agreement, Wells Fargo has committed to engaging in additional rounds of proactive

17   reinstatements, providing customers with notice of their respective rights to seek reinstatement,

18   modifying its suspension and reduction notices, and providing additional detailed information to

19   customers who contact the bank.  The Settlement Agreement also recognizes that Wells Fargo has

20   refined its HELOC suspension and appeal policies after the initiation of these lawsuits, and Wells

21   Fargo has agreed to refrain from making any changes to its practices that are less favorable for

22   consumers.  Accordingly, because the relief afforded to these Settlement Classes is injunctive in

23   nature, certification under Rule 23(b)(2) is appropriate for the Financial Circumstances Class and

24   the Property Value Class.

25                  2.      The Former Customer Class should be certified under Rule 23(b)(3).

26          Rule 23(b)(3) provides that a class action can be maintained where (1) the questions of law

27   and fact common to members of the class predominate over any questions affecting only

28   individuals, and (2) the class action mechanism is superior to the other available methods for the

1   fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Pierce v. Cnty. of*

2   *Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008).  The circumstances surrounding the Former

3   Customer Class readily meet this standard.

4                    a.        *Common questions of law and fact predominate.*

5            The focus of the predominance requirement is whether the proposed class is sufficiently

6   cohesive to warrant adjudication by representation.  *Amchem*, 521 U.S. at 623.  Predominance

7   exists "[w]hen common questions present a significant aspect of the case and they can be resolved

8   for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  Common legal

9   and factual issues have been found to predominate by this Court where the class members' claims

10  arose under TILA and where the claims challenged the bank's lending practices.  *See Plascencia*

11  *v. Lending 1st Mortg.*, 259 F.R.D. 437, 446 (N.D. Cal. 2009).

12           For the Former Customer Class, the core issues of law that predominate are whether Wells

13  Fargo's HELOC suspension and reduction policies and/or procedures violated TILA and

14  Regulation Z, as well as the state consumer protection statutes, whether these practices resulted in

15  systematic breaches of Wells Fargo's HELOC contracts with the Settlement Class Members, and

16  whether, in closing their HELOCs and being charged a deferred origination fee, they were injured

17  by Wells Fargo.  The central factual issues likewise ask whether Wells Fargo's HELOC practices

18  resulted in customers closing their accounts and, if so, whether they were charged deferred

19  origination fees.  Wells Fargo's policies and procedures with respect to HELOCs are universal,

20  both in design and implementation, as to all Settlement Class Members.  As such, the answers to

21  the common questions that resulted from Defendant's alleged conduct are the primary focus and

22  central issue of this class action settlement and thus predominate over any individual issues that

23  may exist.

24                    b.        *This class action, and especially this class action settlement, is the*
                                *superior method for adjudicating the HELOC suspension claims at*
25                              *issue.*

26           The certification of this suit as a class action is superior to any other method available to

27  fairly, adequately, and efficiently resolve the claims of the Settlement Class Members.  The

28  purpose of the superiority requirement is one of judicial economy and assurance that a class action

is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76.  Absent a class action, and considering the fact that the combined Classes include thousands of people, most members of the proposed Classes would find the cost of litigating their claims to be prohibitive and, moreover, such an influx of individual actions would be judicially inefficient.  Also, because the action will now settle, the Court need not give as much consideration to issues of manageability as it would need to if the matter were proceeding to trial.  *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").  Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy for the Former Customer Class in satisfaction of Rule 23(b)(3).

Hence, in addition to satisfying each of the elements of Rule 23(a), the proposed Settlement Classes each meet the requirements of either Rule 23(b)(2) or 23(b)(3).  As a result, this Court should certify the proposed Settlement Classes for the purpose of effectuating the instant settlement.

## IV.   THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court must consider counsel's:  (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Proposed Class Counsel have diligently investigated this matter, dedicating substantial resources to the investigation of the claims at issue in the action.  (Woodrow Decl. ¶¶ 2-5, 15, 18.)  Before the underlying lawsuits were even filed, Plaintiffs' counsel investigated the banking industry's practices in reducing and suspending HELOCs under the TILA and Regulation Z requirements.  (*Id.* at 2.)  Proposed Class Counsel have also interviewed hundreds of homeowners

whose HELOCs were restricted based on either the purported decline in their home value or adverse change in their financial circumstances. (*Id.*) Further, proposed Class Counsel have even testified at a town hall hearing in Orlando, Florida, hosted by the Florida Senate President Mike Haridopolos, entirely devoted to HELOC suspensions by the major banks in the State of Florida. (*Id.* at 4.) Finally, proposed Class Counsel, after extensive research and analysis, submitted a comprehensive response to the Federal Reserve Board's request for public comment to the proposed changes to Regulation Z—the precise regulation at issue in this case. (*Id.*)

During the litigation, Plaintiffs' counsel vigorously pursued the interests of the members of all Classes by briefing several motions, including four motions to dismiss, and one motion to remand, attending two oral arguments, issuing interrogatories and requests for documents, responding to Wells Fargo's discovery, reviewing and analyzing thousands of pages of documents produced by Wells Fargo, attending two mediations and conducting numerous formal and informal dialogs with opposing counsel. (*Id.* at ¶ 15.) Accordingly, Plaintiffs' counsel's diligent and comprehensive investigation into the factual and legal issues of this case is undisputed.

In addition to having a demonstrably effective handle on the procedural hurdles associated with the prosecution and settlement of consumer class actions, Plaintiffs' counsel have also shown an understanding of the relevant substantive legal issues. Counsel's research has shown that it is the first law firm to ever bring a case against a national bank claiming violations of TILA and Regulation Z based on the suspensions and reductions of HELOCs and is the only law firm to submit a substantive response to the Federal Reserve Board's request for public comment regarding the proposed changes to the relevant HELOC regulations. (*Id.* at ¶ 17.) Furthermore, in the *Hickman* matter, Plaintiff Hickman has overcome two motions to dismiss, and Judge St. Eve's comprehensive order has provided direction to the entire HELOC industry moving forward. *See Hickman*, 683 F.Supp.2d 779 (cited multiple times by subsequent courts adjudicating the HELOC cases and referred to routinely by banking industry publications).

Finally, proposed Class Counsel have devoted significant resources and will continue to devote further resources to this class action through the preliminary approval and final approval stages, and beyond through the approximately 12-month period during which Defendant will

1   administer the injunctive relief agreed upon by the Parties.  (Woodrow Decl. ¶ 18.)  Plaintiffs'

2   counsel are committed to ensuring that Plaintiffs and eligible members of the Classes receive

3   meaningful notice of the settlement and their respective relief.  (*Id.*)  Accordingly, the Court

4   should appoint Jay Edelson, Steven L. Woodrow and Evan M. Meyers of Edelson McGuire, LLC,

5   to serve as Class Counsel for the proposed Settlement Classes pursuant to Rule 23(g).

## V.    THE PROPOSED SETTLEMENT FALLS WITHIN THE RANGE OF FINAL APPROVAL AND THUS WARRANTS PRELIMINARY APPROVAL.

7           After certifying the proposed Classes for the purposes of settlement, the Court should grant

8   preliminarily approval.  The procedure for review of a proposed class action settlement is a well-

9   established two-step process.  Fed. R. Civ. P. 23(e); *see also* Newberg, §11.25 at 3839.  The first

10  step is a preliminary, pre-notification hearing to determine whether the proposed settlement is

11  "within the range of possible approval."  *Id.* (*quoting* Manual for Complex Litigation §30.41 (3d

12  ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008); *In re Tableware

13  Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  This hearing is not a fairness

14  hearing; its purpose, rather, is to ascertain whether there is any reason to notify the putative class

15  members of the proposed settlement and to proceed with a fairness hearing.  *Id.*  Notice of a

16  settlement should be sent where "the proposed settlement appears to be the product of serious,

17  informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

18  preferential treatment to class representatives or segments of the class, and falls within the range

19  of possible approval."  *Id.*

20          The Manual for Complex Litigation characterizes the preliminary approval stage as an

21  "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of

22  written submissions and informal presentation from the settling parties.  Manual for Complex

23  Litigation, § 21.632 (4th ed. 2004).  If the Court finds a settlement proposal "within the range of

24  possible approval," it then proceeds to the second step in the review process—the final approval

25  hearing.  Newberg, §11.25 at 3839.

26          A strong judicial policy exists that favors the voluntary conciliation and settlement of

27  complex class action litigation.  *In re Syncor,* 516 F.3d at 1101 (citing *Officers for Justice v. Civil

*Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)).  While the district court has discretion regarding the

approval of a proposed settlement, it should give "proper deference to the private consensual

decision of the parties."  *Hanlon*, 150 F.3d at 1027.  In fact, when a settlement is negotiated at

arm's length by experienced counsel, there is a presumption that it is fair and reasonable.  *In re*

*Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  A settlement negotiated with the

assistance of an experienced private mediator indicates that the settlement was likely reached

fairly and provides adequate relief.  *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL

22244676, at *4 (S.D. N.Y. Sept. 29, 2003).  Ultimately, the Court's role is to ensure that the

settlement is fundamentally fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); *In re Syncor*,

516 F.3d at 1100.

### A.   The Settlement Enjoys a Presumption of Fairness in Light of the Process Used to Achieve It.

There is little question that the proposed Settlement is well within "the range of possible

approval."  First, the Settlement enjoys a presumption of fairness insofar as it was negotiated at

arms length before a nationally respected mediator.  It was only after extensive arm's length

negotiations—including two formal mediation sessions and several months of back-and-forth

telephone discussions conducted under the supervision of Judge Infante—that the Parties were

able to reach the instant Settlement.  (Ex. A, Recital E.)  Accordingly, the Settlement is

presumptively fair.

Recent decisional authority from this circuit instructs that courts should apply a heightened

level of scrutiny for evidence of collusion or other conflicts of interest when a class settlement is

achieved prior to adversarial class certification.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654

F.3d 935, 946-47 (9th Cir. 2011) (discussing "warning signs" that warrant heightened scrutiny,

including disproportionate distributions, "clear sailing" fee arrangements, and reversion of

unawarded fees back to the defendant).  Where such signs are present, "the Court must 'examine

the negotiation process with even greater scrutiny than is ordinarily demanded.'"  *In re HP Laser*

*Printer Litig.*, No. SACV 07-0667 AG RNBX, 2011 WL 3861703, at *4 (C.D. Cal. Aug. 31,

2011) (quoting *In re Bluetooth*, 654 F.3d at 947.)

1    As will be more fully set forth in Plaintiffs' papers filed in support of Final Approval, even

2    though such warning signs are present in this case, there are no conflicts present in this case.  First,

3    the negotiation process spanned over the course of an entire year—this was not a quick sell-out

4    settlement for either party.  To the contrary, both sides communicated their willingness to go

5    forward with the litigation on multiple occasions during the negotiation process.  Moreover, the

6    negotiations were informed by not only Proposed Class Counsel's investigation into the HELOC

7    suspension practices of all the major banks, but also by informal, formal, and confirmatory

8    discovery.

9    Second, the negotiation process was overseen by the Honorable Edward Infante, a

10   mediator with decades of experience helping resolve some of the nation's largest class actions.

11   Judge Infante ensured that the Parties were by no means colluding.  To the contrary, the Parties

12   did not even begin discussing attorneys' fees until after the Parties had agreed on the relief to be

13   made available to the Settlement Classes.

14   Third, although the relief afforded under the instant Settlement Agreement is

15   predominantly injunctive, that is primarily because of the nature of the harm alleged—lost months

16   of HELOC draw period.  A HELOC is not cash:  it is a line of credit, meaning the value resides in

17   being allowed access to the funds.  A HELOC contract typically allows customers to make draws

18   for a set period of time (say, for example, 10 years) after which the customer enters the repayment

19   period.  Instead of causing readily quantifiable money damages, an improper suspension deprives

20   customers of months of draw period.  Therefore, restoring access to the credit line, as opposed to

21   simply being handed a minute sum allegedly representative of the value of the lost access to the

22   HELOC, is what is most valuable to the class members.  Given the nature of the alleged harm,

23   money damages would have been inadequate compensation for the vast majority of Settlement

24   Class Members.

25   Accordingly, and notwithstanding the presence of the so-called warning signs observed in

26   *In re Bluetooth*, this Court should find the Settlement Agreement worthy of preliminary approval.

27

28

**B.     The Settlement Benefits are an Exceptional Result for Settlement Class Members.**

Even without the presumption, the Settlement is demonstrably fair, reasonable and adequate.  The results for the Classes are exceptional.  At the top of the wish list for Class members with HELOCs that remain suspended is the reinstatement of their credit privileges, and this Settlement accordingly focuses on maximizing such relief.  (Ex. A, §3.1(b).)  The Settlement Agreement tackles this head on.  First, and as explained above, following the initiation of the Hickman lawsuit, Wells Fargo started a process of reviewing suspended HELOCs in its portfolio and proactively reinstating accounts that met certain credit criteria.  Through the Settlement Agreement, Wells Fargo has committed to conducting four additional rounds of proactive account reinstatements.  Such proactive reinstatements are intended to restore significant amounts to the Settlement Class Members.  (Woodrow Decl. ¶ 13.)

Second, and as explained above, discovery has shown that Wells Fargo has periodically made alterations to its HELOC treatment policies, including refinements that were made following the initiation of these lawsuits, that are more beneficial to its customers.  (*Id*. at ¶ 7.)  The Settlement Agreement features a Notice of Right to Seek Reinstatement that specifically apprises customers of the existence of these changes and of their ability to request reinstatement under Wells Fargo's current HELOC suspension criteria.  Proposed Class Counsel anticipate based on conversations with Class members, and discovery regarding the success rate for customers who appeal, that a significant percentage of suspended borrowers will respond to the notice by applying for reinstatement and that, of those who seek reinstatement, a significant portion will be ultimately successful in achieving reinstatement.  (*Id*. at ¶ 13.)  Thus, like the proactive reinstatements, the intent is that the notice will lead to greater numbers of HELOC customers seeking and obtaining reinstatement.[6]

_____

[6]     Class counsel's investigation into the HELOC lending industry and both formal and informal discovery in this case indicates that customers have a significant opportunity to receive reinstatement once they apply.  In other words, customers who seek reinstatement have a significant rate of success such that encouraging more customers to seek reinstatement should result in restored credit lines.

1    Third, and on a going forward basis, the Settlement Agreement requires that Wells Fargo

2    provide enhanced notices to customers who request additional information and that Wells Fargo

3    modify its current suspension notices to inform customers of their right to request additional

4    information.  Like the proactive reinstatements and the Notice of Right to Seek Reinstatement,

5    these enhanced notices will lead to greater numbers of customers being able to successfully

6    challenge Wells Fargo's suspension decisions.

7    Further, all Class members will benefit from the Settlement's prohibition on the use of

8    outdated AVMs.  Wells Fargo would not have been able to suspend Plaintiff Hickman's account

9    using a nearly 6-month old AVM had this rule been in place at that time.  Likewise, and in light of

10   Wells Fargo's changes to its policies following the initiation of the litigation, the Settlement

11   restricts Wells Fargo's ability to change its HELOC suspension and reinstatement policies unless

12   such changes are beneficial to consumers.  Also, the Former Customer Class members (who

13   necessarily have closed their Wells Fargo accounts and, therefore, will not benefit from the

14   injunctive relief provided by Wells Fargo unless they become customers again), will receive a

15   cash payment of $150 upon filing a claim form.  This amount represents a significant percentage

16   of the deferred origination fees that Former Customer Class members incurred when closing their

17   HELOC accounts.

18   Although Plaintiffs and their counsel are confident in the strength of their legal claims and

19   that they would ultimately prevail at trial, they also recognize that litigation is inherently risky.

20   (*Id*. at ¶ 16.)  When the strengths of Plaintiffs' claims are weighed against the legal and factual

21   obstacles combined with the complexity of class action practice against experienced defense

22   counsel, it is readily apparent that the proposed Settlement is clearly in the best interest of

23   members of the proposed Classes as it provides substantial injunctive and monetary relief

24   immediately.  (*Id.*)

25   Finally, the Settlement is superior to the only other HELOC settlement known to Class

26   Counsel.  (*Id*. at ¶ 15.)  *See Greenwald v. AmTrust Fin. Corp.*, No. 09-cv-681596 (Ohio Ct. of

27   Common Pleas, Cuyahoga County, settlement finally approved Dec. 18, 2009).  In *Greenwald*, the

28   plaintiff alleged on behalf of himself and all residents of Ohio that AmTrust Bank suspended

HELOCs based on purported declines in home values without regard to the actual market value of the homes.  The plaintiff also alleged that AmTrust charged the class members annual fees while their HELOCs were suspended.  The parties entered into a settlement agreement that provided class members with a cash award in the amount of 35% of the annual fee paid while their HELOCs were restricted.  (*See Greenwald* Settlement Agreement, a true and accurate copy of which is attached hereto as Exhibit D, ¶ 2.)[7]  The bank also undertook to issue credit for an unpaid annual fee to select borrowers.  (*Id.*)  This is the only relief the *Greenwald* class members were entitled to under the settlement agreement.  (*See id.*)

The instant Settlement provides relief far more comprehensive and important than the relief ultimately approved in the *Greenwald* settlement, as it comes on the heels of significant improvements made following the initiation of the litigation, and it stresses reinstatement of restricted HELOCs – which was the primary form of relief sought through the lawsuit – and other valuable service improvements.  Accordingly, this Settlement represents more than the Class Members would have received had the case proceeded to trial and thus easily falls "within the range of possible approval," is fair, reasonable and adequate, and should be preliminarily approved.

## VI.    THE PROPOSED PLAN OF CLASS NOTICE

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Rule 23(e)(1) similarly says, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P. 23(e)(1).  Notice is "adequate if it may be understood

---

[7]     The *Greenwald* settlement agreement gives an example that if the annual fee amounted to $50, the class members would recover $17.50.  If the annual fee was $25, the class members would receive $8.75.  If the particular class members were not charged an annual fee, there would be no recovery.  (*See* Ex. D, n.1.)

by the average class member."  Newberg, § 11:53 at 167.   The substance of the notice to the settlement class must describe the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, as well as explain that settlement class members may enter an appearance through counsel if so desired, request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members.  *See* Fed. R. Civ. P. 23 (c)(2)(B).

In this case, the Settlement Agreement contemplates a comprehensive notice plan designed to reach as many potential Class Members as possible.  (Ex. A, § 5.)

### A.   U.S. Mail Notice

Within 30 days of entry of the Order granting preliminary approval of the Settlement Agreement, Wells Fargo will send or cause Notice to be sent to all Settlement Class Members via U.S. Mail to the last known address in Wells Fargo's records.  The direct notice mailing will include a Notice of Right to Request Reinstatement notifying the Settlement Class Members of their right to request reinstatement of their suspended or reduced HELOCs as well as a claim form for the Former Customer Class members who seek to obtain a settlement benefit.

### B.   Internet Publication

Within 7 days of entry of the Order granting preliminary approval of the Settlement Agreement, traditional "long form" notice will be provided on the settlement website www.WellsFargoHELOCSettlement.com.  (*See* Ex. 4 to the Settlement Agreement.)  The long form notice describes the terms of the Settlement, gives notice to the Class members of their right to seek reinstatement of the suspended or reduced HELOCs, as well as provides a mechanism for the Former Customer Class members to download their claim forms online.

### C.   CAFA Notice

The Settlement Agreement further requires Wells Fargo to comply with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), by serving notice of the proposed Settlement along with all other required documentation to any appropriate state and federal government officials.  (Ex. A, § 5.2(c).)

With respect to oversight, Wells Fargo and/or the Settlement Administrator are required by the Settlement Agreement to provide a declaration prior to the final fairness hearing confirming that the notices were sent in accordance with the Court's anticipated Order granting preliminary approval.  (Ex. A, § III.B.9.)

The format and language of each form of notice has been drafted so that it is in plain language, is easy to read, and will be readily understood by the members of the proposed Classes.  (See Exs. 3 and 4 to the Settlement Agreement.)  Accordingly, the proposed notice plan comports with Rule 23 and the requirements of Due Process and should be approved by this Court.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff Marika Hamilton respectfully requests that the Court certify the Financial Circumstances Class, the Property Value Class and the Former Customer Class, appoint Marika Hamilton, Michael Hickman, Jeffrey and Ellen Yellin, and Brendan O'Leary as the Class Representatives, appoint Jay Edelson, Steven L. Woodrow and Evan M. Meyers of Edelson McGuire, LLC as Class Counsel, grant preliminary approval of the proposed Settlement Agreement, approve the form and manner of notice described above, and grant such further relief the Court deems reasonable and just.

Dated: December 7, 2011                       Respectfully Submitted,

                                              MARIKA HAMILTON, individually and on
                                              behalf of classes of similarly situated individuals,


                                               /s/ Steven L. Woodrow
                                              One of Plaintiff's Attorneys


SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

1    JAY EDELSON (*Pro Hac Vice*)
     jedelson@edelson.com
2    STEVEN L. WOODROW (*Pro Hac Vice*)
     swoodrow@edelson.com
3    EVAN M. MEYERS (*Pro Hac Vice*)
     emeyers@edelson.com
4    EDELSON MCGUIRE, LLC
     350 North LaSalle, Suite 1300
5    Chicago, IL 60654
     Telephone: (312) 589-6370
6    Facsimile: (312) 589-6378
7    ATTORNEYS FOR PLAINTIFF

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

       The undersigned certifies that, on December 7, 2011, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated: December 7, 2011                      EDELSON MCGUIRE, LLP

                                    By:     <u>Sean P. Reis</u>
                                             Sean P. Reis